UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EDWARD TAYLOR                          CIVIL ACTION

VERSUS                                 NUMBER: 12-3027

CAROLYN W. COLVIN, ACTING              SECTION: "C"(5)
COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION


## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2(B), this matter comes before the Court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration denying plaintiff's applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") benefits.  (Rec. docs. 12, 13).

Edward Taylor, plaintiff herein, filed the subject applications for DIB and SSI benefits on September 9, 2010, with a protective filing date of August 25, 2010, alleging disability as of March 1, 2009.  (Tr. pp. 128-131, 132-136, 145).  In a Disability Report that appears in the record, the conditions resulting in plaintiff's inability to work were identified as back/

disc problems and a swollen prostate.   (Tr. pp. 148-155).
Plaintiff's applications for Social Security benefits were denied
at the initial step of the Commissioner's administrative review
process on November 10, 2010.   (Tr. pp. 64-67).   Pursuant to
plaintiff's request, a hearing <u>de</u> <u>novo</u> before an Administrative Law
Judge ("ALJ") went forward on June 23, 2011 at which plaintiff, who
was represented by counsel, and a Vocational Expert ("VE") appeared
and testified.  (Tr. pp. 71-72, 19-47).  On July 26, 2011, the ALJ
issued a written decision in which she concluded that plaintiff was
not disabled within the meaning of the Social Security Act.   (Tr.
pp. 6-18).   The Appeals Council ("AC") subsequently denied
plaintiff's request for review of the ALJ's decision, thus making
the ALJ's decision the final decision of the Commissioner.  (Tr.
pp. 1-5).  It is from that unfavorable decision that the plaintiff
seeks judicial review pursuant to 42 U.S.C. §§405(g) and
1383(c)(3).

　　　In his cross-motion for summary judgment, plaintiff frames the
issues for judicial review as follows:

    I.   THE ALJ FAILED TO APPLY THE CORRECT LEGAL STANDARD IN
        FINDING THAT PLAINTIFF'S [SIC] HAS NO SEVERE IMPAIRMENT.

    II.  THE ALJ FAILED TO APPLY THE PROPER LEGAL STANDARD TO
       DETERMINE THE CREDIBILITY OF THE PLAINTIFF.

(Rec. doc. 12-1, p. 5).

　　　Relevant to the issues to be decided by the Court are the
following findings that were made by the ALJ:

1.   [t]he claimant meets the insured status requirements of
the Social Security Act through December 31, 2013.

2.   [t]he claimant has not engaged in SGA since March 1,
2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and
416.971 *et seq.*).

3.   [t]he claimant has the following medically determinable
impairments: degenerative disc disease and prostatitis (20 CFR
404.1521 *et seq.* and 416.921 *et seq.*).

4.   [t]he claimant does not have an impairment or combination
thereof that has significantly limited (or is expected to
significantly limit) the ability to perform basic work-related
activities for twelve (12) consecutive months; therefore, the
claimant does not have a severe impairment or combination
thereof (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).

5.   [t]he claimant has not been under a disability, as
defined in the Social Security Act, from March 1, 2009,
through the date of this decision (20 CFR 404.1520(c) and
416.920(c)).

(Tr. pp. 11, 14).

Judicial review of the Commissioner's decision to deny DIB or
SSI benefits is limited under 42 U.S.C. §405(g) to two inquiries:
(1) whether substantial evidence of record supports the
Commissioner's decision, and (2) whether the decision comports with
relevant legal standards.  <u>Anthony v. Sullivan</u>, 954 F.2d 289, 292
(5th Cir. 1992); <u>Villa v. Sullivan</u>, 895 F.2d 1019, 1021 (5th Cir.
1990); <u>Fraga v. Bowen</u>, 810 F.2d 1296, 1302 (5th Cir. 1987).  If the
Commissioner's findings are supported by substantial evidence, they
are conclusive and must be affirmed.  42 U.S.C. §405(g); <u>Richardson
v. Perales</u>, 402 U.S. 389, 91 S.Ct. 1420 (1970).  A finding of no
substantial evidence is appropriate only if no credible evidentiary
choices or medical findings exist to support the Commissioner's

decision. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Jones v. Heckler, 702 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve, not the courts. Patton v. Schweiker, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant seeking DIB or SSI benefits bears the burden of proving that he is disabled within the meaning of the Social Security Act. Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). Once the claimant carries his initial burden, the Commissioner then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and is, therefore, not disabled. Harrell, 862 F.2d at 475. In making this determination, the Commissioner utilizes the five-step sequential analysis set forth in 20 C.F.R. §§404.1520 and 416.920, as follows:

   1. an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.

   2. an individual who does not have a "severe impairment" will not be found to be disabled.

3. an individual who meets or equals a listed impairment in Appendix 1 of the Regulations will be considered disabled without consideration of vocational factors.

4. if an individual is capable of performing the work that he has done in the past, a finding of "not disabled" must be made.

5. if an individual's impairment precludes him from performing his past work, other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.

On the first four steps of the analysis, the claimant bears the burden of proving that he is disabled. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 2294 n. 5 (1987). A finding that the claimant is disabled or is not disabled at any point in the sequential review process is conclusive and terminates the Commissioner's analysis. <u>Wren v. Sullivan</u>, 925 F.2d 123, 125-26 (5th Cir. 1991).

The medical records that were admitted in the administrative proceedings below begin with a March 12, 2009 treatment note from Dr. William Alden of the Metropolitan Health Group. Plaintiff presented to the doctor on that date complaining of lower back pain after having been involved in a vehicular accident the previous day. As related to the doctor, plaintiff was an unrestrained passenger in the backseat of a van that was struck on the front driver's side by an eighteen-wheeler as it was attempting to enter plaintiff's lane. The damage to the van was moderate but the airbags did not deploy. Plaintiff was able to get out of the

vehicle and walk around the accident scene and although he reported suffering from headaches, he had no head trauma, loss of consciousness, dizziness, nausea, or vomiting. Plaintiff had not been treated at the emergency room and was on no medication. He was unemployed at the time. A physical examination was performed by Dr. Keith which revealed a normal cervical range of motion with no tenderness or spasm noted over the cervical paraspinous, trapezius, or sternocleidomastoid muscles and no thyromegaly. Lumbar range of motion was limited secondary to pain and there was tenderness in the lumbar midline and tenderness and spasm in the lumbar paravertebral muscles. Straight leg raising was negative. Plaintiff could move all extremities well, reflexes were equal and intact, and strength, motor, and sensation exams were normal. The impression was post traumatic cephalgia and lumbar strain with spasm. Plaintiff was prescribed Ultram, Mobic, Flexeril, and Pepcid and was to return in four weeks for follow-up. (Tr. pp. 190-191).

Pursuant to a referral from Dr. Alden, x-rays of plaintiff's back were taken on that same day. Examination of the cervical spine revealed cervical spasm and relatively narrow fifth and sixth cervical interspaces. The lumbar spine survey revealed mild hypertrophic reactions and those of the thoracic spine demonstrated old traumatic and/or degenerative changes. (Tr. p. 201).

Plaintiff returned to Dr. Alden on April 9, 2009 with

6

complaints of continued back pain at a level of "9" with his symptoms being slightly improved by then as being more "off and on". Standing and bending aggravated plaintiff's symptoms the most but there was no radiating pain, numbness, tingling, or weakness in the extremities. Relief was obtained with prescribed treatment. On physical examination, lumbar range of motion was painful; there was tenderness down the lumbar midline; and there was tenderness and muscle spasm over the lumbar paraspinous muscles bilaterally but straight leg raising was negative. Movement was intact in all extremities and a neurological examination was normal. Plaintiff was continued on his medication regimen and was to return in four weeks. (Tr. p. 192). By May 1, 2009, plaintiff's pain was down to a level of "5" and was "off and on". An examination of the neck was normal but lumbar range of motion was painful with tenderness and muscle spasm as was noted at the previous visit. Use of the extremities and the results of a neurological examination were unchanged. Medications were continued and plaintiff was to return in four weeks. (Tr. p. 193).

When plaintiff returned to Dr. Alden on May 29, 2009, he reported that his pain, although still "off and on", had worsened to a level of "10". The results of a physical examination were unchanged as was the course of treatment. (Tr. p. 194). On June 26, 2009, plaintiff complained of headaches at a rate of two to three per week in addition to low back pain which was then at a

level of "7". He was sleeping better at night but there was some tingling in the legs, especially on the left side. The results of a physical examination were unchanged but there was now left-sided sciatica. Plaintiff was administered a Toradol injection, his other medications were continued, and an MRI was ordered. (Tr. p. 195).

Commencing on July 7, 2009, plaintiff attended physical therapy on approximately nineteen occasions until his discharge on October 15, 2009. (Tr. pp. 202-213). At the time of his discharge, the therapist indicated that the goal of decreasing plaintiff's pain was only partially met with a 10% reduction but that the remainder of his goals had been achieved including a pain-free increased range of motion in lumbar flexion to within normal limits and an independent home exercise program and medical management. (Tr. p. 213).

In the interim, plaintiff had been seen again by Dr. Alden on July 27, 2009. Headaches were no longer complained of. Lumbar range of motion was painful in all directions and the results of a physical examination were unchanged from previous visits. Plaintiff's medication regimen and conservative treatment program were continued. (Tr. p. 196). The following day, plaintiff underwent an MRI of the lumbar spine without contrast. That study revealed a prominent S1-S2 intervertebral disc; focal posterior herniation of the L5-S1 disc on the left side with edema or

hemorrhage annulus fibrosis tear and apparent effacement of the left S1 nerve root and potentiation of the relative neural formina stenosis secondary to facet stenosis; posterior bulging of the L4-L5 disc toward the right and left posterior lateral margins; and, lumbar facet arthrosis, most pronounced at L5-S1.  (Tr. pp. 184-186).

Plaintiff was seen again by Dr. Alden on August 24, 2009 for complaints of continued "off and on" lower back pain at a level of "6".  Activity and exertion were aggravating factors but there was no radiation of the pain, numbness, tingling, or weakness in the extremities.  Relief was obtained through prescribed medication and treatment.  Once again, the results of a physical examination were unchanged from the previous visit.  After reviewing the recent MRI report, the doctor continued plaintiff on his medications and conservative treatment regimen and referred him for a neurological evaluation.  (Tr. pp. 197-198).  Plaintiff rated his pain at a level of "8" on October 1, 2009 which was mostly aggravated by sitting.  The results of a physical examination were the same.  He was continued on his medications and was referred for an orthopedic evaluation and for lumbar epidural steroid injections.  (Tr. p. 199).  As was noted earlier, pursuant to plaintiff's request,  he was discharged from physical therapy on October 15, 2009 as he felt that his treatment goals had been net, that he could manage his symptoms on his own, and that his maximum rehabilitative potential

had been reached.  (Tr. p. 213).

When plaintiff returned to Dr. Alden on November 17, 2009, he reported improvement to his lower back symptoms, experiencing only minimal pain and expressing a desire to be discharged from the doctor's care.  Both cervical and lumbar range of motion were normal with no tenderness or muscle spasms and the neurological exam was normal as well.  Given those findings, Dr. Alden discharged plaintiff from his care with instructions to take over-the-counter medications as needed for any mild recurrent discomfort.  (Tr. p. 200).

The next treatment note was not generated until August 11, 2010, almost nine months later, when plaintiff was seen at the Medical Center of Louisiana at New Orleans' ("MCLNO") Urgent Care Clinic for complaints of a swollen prostate, difficulty urinating, and an elevated PSA.  A referral was to be made to the Urology Clinic.  (Tr. p. 218).  Plaintiff was seen again at MCLNO on August 27, 2010 for complaints of dysuria for the previous three to four months and occasional right testicular pain.  Medications at the time were Cardura and Ibuprofen.  The assessment was dysuria, prostatitis, elevated PSA, and rule out sexually transmitted disease ("STD").  Plaintiff was given a prescription for Bactrim and a new PSA reading was to be obtained in one month.  (Tr. pp. 220-222, 252).  STD testing was negative.  (Tr. p. 235).

On September 23, 2010, plaintiff completed the

Administration's "Function Report - Adult" form that is designed to elicit information about how his conditions limit his activities. There, plaintiff indicated that he experienced sharp pain in his back when trying to paint or clean his house and that sitting in one spot was limited.  An average day consisted of waking, preparing breakfast, reading, taking a walk, watching TV, napping, visiting with others, and cleaning up.  Sleep was occasionally affected but plaintiff could tend to his personal needs, prepare meals on a daily basis, and perform some chores like cleaning, doing laundry, and ironing although he needed assistance with other tasks.  He took walks every day, could go out alone, and could use public transportation.  In terms of hobbies and interests, plaintiff read a lot, watched TV, and did some drawing on a daily basis but inconsistent answers were given with respect to bike riding.  Plaintiff estimated that he could lift twenty pounds and walk four blocks before needing a five-minute rest.  Attention was unaffected and he could handle authority figures very well and stress pretty well.  When plaintiff's pain was unbearable he took Extra Strength Tylenol for relief.  Friends and relatives assisted him with shopping and with meals.  (Tr. pp. 168-175).

Plaintiff's PSA was elevated at 18.8 when it was tested on October 5, 2010.  (Tr. pp. 233, 253).  On November 2, 2010, plaintiff underwent a consultative evaluation at the hands of Dr. Sheldon Hersh.  Complaints at the time were "tingling pain" in the

lower back which did not radiate.  Plaintiff estimated that he could sit for fifteen minutes, stand for thirty minutes, walk four blocks, and carry fifteen pounds.  Activities of daily living included watching TV and occasional cleaning, shopping, reading, and getting out of the house.  Upon physical examination, plaintiff was observed to sit comfortably with no discomfort in the back; straight leg raising was negative; there was no tenderness or spasm; and there was no pain with ambulation.  The upper and lower extremities and the neurological exam were all normal.  In his "problem summary", Dr. Hersh identified back pain with a full range of motion, no findings on examination, and a normal gait.  The assessment contained no positive findings and the doctor opined that "[t]here is no contraindication to this patient's work ability." (Tr. pp. 225-227).

On November 10, 2010, an Administration Disability Adjudicator and a Medical Consultant, Dr. Julius Isaacson, reviewed plaintiff's file as it was then extant and concluded that no physical limitations were apparent and that plaintiff retained the residual functional capacity ("RFC") to perform his past work as a painter as that work is actually performed.  (Tr. pp. 48-63, 228).  On that basis, plaintiff's applications for Social Security benefits were denied at the initial level of the Commissioner's administrative review process.  (Tr. pp. 64-67).  Plaintiff's PSA was still elevated at 14.1 on December 1, 2010.  (Tr. p. 232).

Plaintiff presented to the MCLNO Urgent Care Clinic on December 29, 2010 requesting a refill of Cardura for his prostatic hypertrophy but otherwise having no acute medical complaints.  A physical examination was grossly unremarkable.  The requested medication refill was authorized.  (Tr. pp. 230-231).  Plaintiff was next seen at the Urology Clinic on January 7, 2011 and a prostate biopsy was scheduled.  (Tr. p. 234).  That procedure was performed on January 25, 2011 without complications.  (Tr. pp. 238-239, 249-251, 254, 266).  However, the following day plaintiff was seen at the MCLNO ER with complaints of passing blood, an inability to urinate, and severe pain/discomfort.  Through cystoscopy a Foley catheter was put into place and plaintiff was discharged with a prescription for Cipro and instructions to follow-up with his urologist.  (Tr. pp. 240-241, 261).

On January 28, 2011, plaintiff was seen again at MCLNO for the purpose of establishing a relationship with a primary care physician.  By that time, plaintiff had been fitted with a Foley bag but there was no hematuria or clots noted.  He also complained of some radiating, throbbing left shoulder pain as well as some numbness and tingling that was worse since his biopsy.  The pain was rated as an "8" but there was no loss of strength in the arm.  On physical examination, plaintiff had a positive left upper extremity apprehensive test and a decreased range of motion.  A battery of tests was scheduled; plaintiff was to follow-up with the

Urology Clinic, and Flexeril, as well as other non-prescription modalities, was prescribed for his left shoulder pain. (Tr. pp. 242-244, 263-265).

Plaintiff was next seen at the Urology Clinic on February 1, 2011. He was doing well and had no complaints at the time other than the presence of the catheter after having healed up well from the prostate biopsy. The results of the biopsy were negative, the catheter was removed, and a voiding trial was successfully completed. Repeat PSA testing was to occur in six months. (Tr. pp. 245-246, 262). Plaintiff was seen again at the Urology Clinic on February 8, 2011 and further labwork and follow-up was scheduled during the summer months. (Tr. p. 260).

The final piece of documentary evidence that was admitted in the administrative proceedings below is a treatment note from the MCLNO Urgent Care Clinic dated April 1, 2011. At that time, plaintiff complained of low back pain since the accident in March of 2009 which he stated had not changed. There was no radiation, abdominal pain, urinary symptoms, lower extremity pain, numbness, or tingling. Plaintiff had exhausted his supply of Flexeril and indicated that his pain was typically relieved well with Ibuprofen. Upon physical examination, there was minimal paraspinal muscle tenderness but no midline tenderness, strength was 5/5 in the lower extremities, sensation was intact, and gait was normal. The diagnosis was low back pain and plaintiff's prescription for

Flexeril was refilled.  (Tr. pp. 247-248, 256-259).

As noted earlier, a hearing _de novo_ before an ALJ went forward on June 23, 2011 with plaintiff and a VE in attendance.  After the documentary exhibits were admitted into evidence, plaintiff's counsel gave an opening statement in which he noted plaintiff's lengthy work history as a banquet waiter until March of 2009 when his back could no longer handle the lifting involved in that job and he was terminated for failing to report to work.  Counsel also pointed to the results of the MRI that was performed on July 28, 2009, the alleged lack of success of "...every modality of treatment that exists", and continued severe pain that began in plaintiff's lumbar spine and radiated to other parts of his body. Finally, counsel argued that because standing aggravated plaintiff's condition, he was limited to performing sedentary-level work or less and, as such, that the Medical-Vocational Rules would direct a finding of "disabled".  (Tr. pp. 21-24).

Plaintiff then took the stand and was questioned by his attorney.  He was fifty-three years of age at the time, stood 5'9" tall, and weighed 192 pounds, having gained twenty pounds as a result of quitting smoking.  Plaintiff had completed eleven grades of formal education following which he obtained a certificate in commercial art.  Plaintiff testified that he had last worked as a house painter which involved lifting weights of up to twenty pounds.  Before that, he was a banquet waiter for twenty-five years

which involved lifting weights of up to fifty pounds.  Plaintiff further testified that he had stopped working as a painter because the bending that was involved in that job caused pain.  He had been terminated from his waiter job for lack of punctuality after being unable to get to work early due to the pain that was brought on by his condition.  When asked how he had injured his back, plaintiff testified that the vehicular accident in March of 2009 had resulted in a worsening of his condition.  He experienced sharp pain in his lower back at various times, limiting sitting to thirty to sixty minutes and walking to eight to twelve blocks.  Bike riding was eliminated entirely.  At night, plaintiff's back pain would radiate down his right leg to his toe.  Treatment had consisted of physical therapy and medication and plaintiff was reportedly still in pain despite the muscle relaxers and other medications he had been prescribed.  Ibuprofen had also been recommended by his doctor. (Tr. pp. 24-29).

Continuing, plaintiff testified that when his back pain was at its worst, which was maybe four or five times per month, he wore a back brace for relief.  A typical day consisted of reading and watching TV but activities like sweeping caused sharp back pain so plaintiff had a friend clean for him.  He could no longer do yard work or play sports but he did take daily walks around the block. Sharp back pain was experienced after standing for thirty minutes or after walking eight to twelve blocks and right hip pain was

elicited when climbing stairs.   Lifting was limited to twenty pounds.  (Tr. pp. 29-31).

Upon being questioned by the ALJ, plaintiff testified that over-the-counter Ibuprofen provided relief and that he took prescribed muscle relaxers as well.  Without such medication, plaintiff's pain was at a level of "6" or "7" but was down to "5" after medicating.  Plaintiff intended to inform his doctor of the muscle relaxers' ineffectiveness at his next appointment. Discussing stair climbing again, plaintiff testified that there were six steps to his house which he climbed eight times per day either going to the corner store of taking his daily walks which were four to six blocks in length.  However, he experienced pain if he exceeded that distance.  Plaintiff only took medication in the evening because that was typically when he experienced pain.  He was able to shower and dress himself without assistance but he sometimes experienced lower back pain when rising after tying his shoes.  Bending at the waist elicited pain as did getting out of bed.  When asked about his prostate issues, plaintiff testified that those were not affecting him at the time.  Numbness and tingling down his right leg were to be reported to his doctor at the next visit.  Plaintiff had no income, relied on his girlfriend to pay the utilities, and received $200 per month in food stamps. He had received a $6,800 settlement for the motor vehicle accident the previous month and his medical care had been funded through

that time.  Plaintiff did not believe that he could return to his previous job as a banquet waiter due to the lifting and walking demands required by that position.  However, he was receptive to considering other jobs that were worthwhile and pain-free but a vocational rehabilitation counselor had not been consulted in that regard.  (Tr. pp. 31-41).

Deborah Bailey, a VE, was the next witness to take the stand. She began by classifying the exertional and skill demands of plaintiff's past work as a banquet waiter as light, semi-skilled work as classified by the Dictionary of Occupational Titles ("DOT") but medium in nature as plaintiff himself had described it. Plaintiff's past job as a painter was classified by the DOT as involving light, skilled work.  Neither of those jobs had resulted in any transferable work skills.  The ALJ then posed a hypothetical question to the VE which assumed an individual of plaintiff's age, education, and work experience who had the RFC to perform light work with an at-will sit/stand option provided that the person was not off task more than 10% of the work period; who could never climb ladders/ropes/scaffolds and only occasionally climb ramps/stairs; and, who could only occasionally stoop, crouch, kneel, or crawl.  With those limitations in mind, the VE testified that the described individual would not be able to perform plaintiff's past work as it is customarily or was actually performed and that an RFC of sedentary-level work was more

18

appropriate.   At that exertional level and with the added limitations in mind, the VE testified that the individual described in the hypothetical question could function as an information clerk, an assembler, and a general office clerk with significant numbers of those jobs existing in the local and national economies. (Tr. pp. 42-44).

The ALJ then posed a second hypothetical question to the VE which assumed an individual of plaintiff's age, education, and work experience who had the RFC for light work; who needed the ability to withdraw from his work station at unscheduled times due to severe pain associated with disorders of the back resulting in work not being completed in a timely manner; and, who had an inability to sustain sufficient concentration, persistence, or pace to do even simple, routine tasks on a regular and continuing basis for an eight-hour workday.   With those limitations in mind, the VE testified that the described individual would be unable to perform plaintiff's past work or any other work.   The VE further testified that her testimony was consistent with the DOT and that the jobs that she had identified in answer to the first hypothetical were representative, not exhaustive.   Plaintiff's counsel had no questions for the VE.   In closing, counsel argued that under either of the VE's hypotheticals, a finding of "disabled" was warranted. (Tr. pp. 44-47).

Plaintiff challenges the ALJ's decision to deny him Social

Security benefits on two grounds.  In the first of those, plaintiff argues that the ALJ failed to apply the correct legal standard in finding that he had no severe impairment.

What constitutes a "severe impairment" under the Social Security Act is determined by reference to several of its applicable Regulations, as follows:

> (4) *The five-step sequential evaluation process.*
>
> *   *   *   *   *   *
>
> (ii) At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the <u>duration</u> <u>requirement</u> in §404.1509, or a combination of impairments that is severe and meets the <u>duration</u> <u>requirement</u>, we will find that you are not disabled. (*See* paragraph (c) of this section.)
>
> *   *   *   *   *   *
>
> (c) *You must have a severe impairment.* If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.  We will not consider your age, education, and work experience. <u>However</u>, <u>it is possible for you to have a period of disability for a time in the past even though you do not now have a severe impairment.</u>
>
> 20 C.F.R. §§404.1520(a)(4)(ii)(c), 416.920(a)(4)(ii), (c)

(emphasis added).

Further guidance is provided elsewhere in the Regulations, as follows:

**What we mean by an impairment(s) that is not severe.**

(a) *Non-severe impairment(s).* An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.

(b) *Basic work activities.* When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include --

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

20 C.F.R. §§404.1521, 416.921.

As the caselaw makes clear, included within the severity inquiry is a durational requirement that the significantly limiting impairment last for a continuous period of twelve months. <u>Gilcrease v. Astrue</u>, 235 Fed.Appx. 201, 202 n.1 (5th Cir. 2007); <u>Gonzales v. Astrue</u>, 231 Fed.Appx. 322, 324 n.1 (5th Cir. 2007);

21

Singletary v. Bowen, 798 F.2d 818, 821 (5th Cir. 1986); Ponce v.
Astrue, No. 09-CV-0364, 2010 WL 4269606 at *3 (W.D. Tex. 2010).
See also, Hughes v. Commissioner of Social Security, 297 Fed.Appx.
123, 125-26 (3rd Cir. 2008); Mulero v. Commissioner of Social
Security, 108 Fed.Appx. 642 (1st Cir. 2004)(to be "severe,"
impairment must satisfy durational requirement).

In her written opinion of July 26, 2011, the ALJ first
properly summarized the determination that must be made at step two
of the §§404.1520/416.920 sequential analysis, as follows:

> [a]t step two, I must determine whether the claimant has
> a medically determinable impairment that is "severe" or
> a combination thereof that is "severe" (20 CFR
> 404.1520(c) and 416.920(c)).   An impairment or
> combination thereof is "severe" within the meaning of the
> regulations if it significantly limits an individual's
> ability to perform basic work activities.  It is "not
> severe" when medical and other evidence establish only a
> slight abnormality or a combination thereof that would
> have no more than a minimal effect on a claimant's
> ability to work (20 CFR 404.1521 and 416.921; Social
> Security Rulings (SSR's) 85-28, 96-3p, and 96-4p).   If
> the claimant does not have a severe medically
> determinable impairment or combination thereof, he is not
> disabled, but if he does, the analysis proceeds.

(Tr. p. 10).

After finding that plaintiff had not engaged in substantial
gainful activity since the alleged onset date of March 1, 2009, the
ALJ proceeded to step two of the sequential analysis and reached
the following conclusions:

> 3.  [t]he claimant has the following medically
> determinable impairments: degenerative disc disease and
> prostatitis (20 CFR 404.1521 *et seq.* and 416.921 *et
> seq.*).

22

> 4.   [t]he claimant does not have an impairment or
> combination thereof that has significantly limited (or is
> expected to significantly limit) the ability to perform
> basic work-related activities for twelve (12) consecutive
> months; therefore, the claimant does not have a severe
> impairment or combination thereof (20 CFR 404.1521 *et
> seq.* and 416.921 *et seq.*).

(Tr. p. 11).

The ALJ then methodically discussed the evidence of record, including the Function Report that had been completed by plaintiff on September 23, 2010, his hearing testimony, and the records of the treating and consultative physicians. (Tr. pp. 11-14). Having done so, the ALJ made following findings with respect to the alleged disabling conditions:

> [t]he claimant did *not* complain of any prostate problems
> at the consultative appointment in November 2010; and he
> admitted at the hearing that this medically determinable
> impairment does *not* affect his functioning.
>
> Therefore, the evidence fails to establish that the
> claimant's medically determinable impairments, considered
> singly and in combination, can be expected to result in
> death or that they have significantly limited the
> claimant's ability to perform basic work-related
> activities <u>for a continuous period of not less than
> twelve (12) months</u>. Rather, the evidence indicates that
> the claimant's back impairment (which he incurred in
> March 2009) ceased to significantly limit his physical
> functioning in October or November of 2009. Thus, the
> durational requirement is not met, and I cannot find this
> impairment to be "severe" as contemplated by the
> regulations.
>
> In sum, the evidence of record supports the conclusion
> that the claimant does not have an impairment or
> combination thereof that significantly limits his ability
> to perform basic work-related activities. I find that
> the claimant's medically determinable impairments
> constitute only slight abnormalities having "such minimal
> impact on the individual that [they] would not be

expected to interfere with the individual's ability to work, irrespective of age, education or work experience" (*Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)).

(Tr. p. 14)(emphasis in original).

Contrary to plaintiff's present assertions, the ALJ did not apply an incorrect legal standard in adjudicating his applications for Social Security benefits at the second step of the §§404.1520/416.920 analysis. Rather, the ALJ simply found that his back and prostate problems did not significantly limit his ability to engage in work-related activities for a continuous period of twelve months and were, therefore, not severe. As respects the latter condition, plaintiff complained of a swollen prostate on August 11, 2010 and was treated with antibiotics. When he was consultatively evaluated by Dr. Hersh on November 2, 2010, he voiced no complaints or limitations resulting from his bout of dysuria and prostatitis and the doctor opined that there was no contraindication to plaintiff's work ability. Plaintiff underwent a prostate biopsy on January 25, 2011, the results of which were negative, and by February 1, 2011, he was well-healed from that procedure and had no complaints. No further treatment for prostate difficulties is reflected by the record. At the administrative hearing on June 23, 2011, counsel did not argue that plaintiff was limited by prostate issues and plaintiff himself candidly admitted that his prostate was not affecting him in any way. As such, plaintiff's prostate problem was a transient issue that had

24

resolved within six months.  As it did not significantly affect his ability to engage in work-related activities for a continuous period of twelve months, it was properly found to be non-severe. Hughes, 297 Fed.Appx. at 125-26; Mulero, 108 Fed.Appx. at 642 (impairment must satisfy durational requirement to be "severe").

As respects plaintiff's back impairment, the ALJ similarly concluded that it did not significantly affect his ability to engage in work-related activities for a continuous twelve-month period.  At the administrative hearing, counsel argued that plaintiff had worked as a banquet waiter until March of 2009 when the lifting requirements of that job proved to be too much. However, plaintiff had actually left the waiter job some time in 2008 and had worked as a painter until February of 2009.  (Tr. p. 150).  For his part, plaintiff testified that the auto accident that he was involved in on March 11, 2009 had resulted in a worsening of his condition.  He began a course of conservative treatment with Dr. Alden the following day which ended on November 17, 2009, some eight months later, when he reported significant improvement to his lower back symptoms and requested to be discharged from the doctor's care; only over-the-counter medications as needed were recommended for any mild recurrent discomfort.  Plaintiff would not receive any further medical treatment until nine months later when he was seen for genitourinary issues.

Throughout his treatment course with Dr. Alden, plaintiff received conservative care in the form of prescription medication and physical therapy.  At no time did the doctor advise plaintiff to limit his activities in any way, a proper consideration in determining his disability status.  Leggett v. Chater, 67 F.3d 558, 565 (5th Cir. 1995); Vaughan v. Shalala, 58 F.3d 129, 131 (5th Cir. 1989).  Prior to requesting a discharge by Dr. Alden on November 17, 2009, plaintiff had also requested his discharge from physical therapy on October 15, 2009 as he felt that his treatment goals had been met, including a pain-free increased range of motion in lumbar flexion to within normal limits, and that he could manage his symptoms on his own.  By the time that he was evaluated by Dr. Hersh on November 2, 2010, there were no positive findings whatsoever, another proper consideration.  Adams v. Bowen, 833 F.2d 509, 512 (5th Cir. 1987).

As respects plaintiff's headaches, those were not identified as a disabling condition in his applications for benefits and related paperwork, Pierre v. Sullivan, 884 F.2d 799, 802 (5th Cir. 1989), and as they lasted only from the time of plaintiff's accident on March 11, 2009 until his visit with Dr. Alden on July 27, 2009, they also fail to satisfy the durational requirement and are thus not severe.  After reviewing plaintiff's file, Dr. Isaacson opined that no physical limitations had been established. Opinions like Dr. Isaacson's are entitled to due consideration in

the disability adjudication process.   20 C.F.R. §§404.1527(e), 416.927(e).   Given the evidence that was before her, the ALJ correctly concluded that plaintiff's back and prostate issues were not severe because they did not significantly limit his ability to engage in work-related activities for a continuous period of twelve months.

In his second challenge to the Commissioner's decision, plaintiff argues that the ALJ applied an incorrect legal standard in assessing his credibility.   Once again, a review of the record does not bear this out.

The law is clear that an ALJ must consider a claimant's subjective complaints of pain and other limitations.   Scharlow v. Schweiker, 655 F.2d 645, 648 (5th Cir. 1981).   However, it is within the ALJ's discretion to determine their debilitating nature.   Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987).   Pain is considered disabling within the meaning of the Social Security Act only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment."   Hames v. Heckler, 707 F.2d 162, 166 (5th Cir. 1983).   The burden is upon the plaintiff to produce objective medical evidence of a condition that could reasonably be expected to produce the level of pain or other symptoms complained of.   Selders v. Sullivan, 914 F.2d 614, 618 (5th Cir. 1990); Harper v. Sullivan, 887 F.2d 92, 96 (5th Cir. 1989).   The ALJ must then weigh the plaintiff's subjective testimony against the objective medical

evidence that has been produced. <u>Chaparro v. Bowen</u>, 815 F.2d 1008, 1010 (5th Cir. 1987)(citing <u>Jones</u>, 702 F.2d at 621 n.4).   The ALJ may discredit a plaintiff's subjective complaints of pain and attendant physical limitations if she carefully weighs the objective evidence and articulates her reasons for doing so. <u>Anderson v. Sullivan</u>, 887 F.2d 630, 633 (5th Cir. 1989)(citing <u>Abshire v. Bowen</u>, 848 F.2d 638, 642 (5th Cir. 1988)).   It must be remembered that the evaluation of a plaintiff's subjective complaints is a task particularly within the province of the ALJ for it was the ALJ who had an opportunity to observe the plaintiff, not the Court. <u>Harrell</u>, 862 F.2d at 480.   The mere existence of pain or the fact than an individual is unable to work without experiencing pain is not an automatic ground for obtaining Social Security benefits. <u>Owen v. Heckler</u>, 770 F.2d 1276, 1281 (5th Cir. 1985)(citing <u>Jones</u>, 702 F.2d at 621 n.4).

In finding that plaintiff did not suffer from a severe impairment, the ALJ properly recited her obligation to consider all of plaintiff's symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence as required by 20 C.F.R. §§404.1529 and 416.929 and Social Security Rulings ("SSR") 96-4p and 96-7p. (Tr. p. 11).   The ALJ then recalled the various factors that must be considered under SSR 96-7p in addition to the objective medical evidence when assessing a claimant's credibility, including his

daily activities; the location, duration, frequency, and intensity of pain; the type, effectiveness, and side effects of any medication; any other ameleorative treatment other than medication; and any other factors concerning the claimant's functional limitations and restrictions due to pain and other symptoms. (Tr. pp. 11-12).

After citing the applicable Regulations and SSR's, the ALJ summarized plaintiff's hearing testimony, expressing doubt as to its credibility when weighed against the objective medical evidence which she then described in some detail. (Tr. pp. 12-14). Most notably, the ALJ recalled plaintiff's conservative treatment history with Dr. Alden, the relief that he obtained with medication, and the lack of any radiating pain, numbness, tingling, or weakness in the extremities. (Tr. p. 13). By July of 2009, plaintiff's pain had improved to the point of being "off and on" and radiating pain continued to be denied. Despite the subsequent MRI findings, straight leg raising was negative and strength, motor, and sensation exams were normal. Although Dr. Alden offered referrals to a neurologist and for a lumbar epidural steroid injection, plaintiff failed to avail himself of those options which suggests that his back condition was not as disabling as he alleged. Instead, as the ALJ noted in bold type, in November of 2009, plaintiff reported to Dr. Alden that his lower back symptoms had improved, leaving him with only "minimal pain". A physical

examination done at the time was normal and there was a non-painful range of motion in the cervical and lumbar spines with no tenderness or spasm in any of the back muscles. (Id.). Given those unremarkable findings, Dr. Alden discharged plaintiff from his care in satisfactory condition with instructions to take only over-the-counter medications as needed for any mild recurrent discomfort. (Id.). The lack of any significant findings may properly be considered by the ALJ in determining plaintiff's disability status. Adams, 833 F.2d at 512.

As the ALJ also noted, prior to his discharge by Dr. Alden plaintiff had requested a discharge from physical therapy as his treatment goals had been met, including increasing lumbar range of motion to within normal limits with pain-free flexion. (Tr. p. 13). Plaintiff complained of low back pain in April of 2011 but there was no radiation, lower extremity pain, numbness, or tingling and he indicated that any pain was typically relieved well with mere Ibuprofen. (Tr. pp. 13-14). When consultatively evaluated by Dr. Hersh, there were no positive findings at all and thus no contraindication to plaintiff's work ability. The ALJ additionally noted that plaintiff's prostate difficulties had fully resolved within six months as plaintiff himself acknowledged at the administrative hearing. (Tr. p. 14). Further casting doubt on plaintiff's claim of a complete inability to work were the activities that he was capable of as reflected in the Function

30

Report and his hearing testimony.   (Tr. p. 12).   Plaintiff's ability to engage in such activities is not indicative of someone who is precluded from performing all work activities.   Anderson, 887 F.2d at 632; Chaparro, 815 F.2d at 1010.

Contrary to plaintiff's present assertions, the ALJ did not apply an incorrect legal standard in assessing his credibility. Given the well-established principle that subjective evidence does not take precedence over objective evidence, Villa, 895 F.2d at 1024, the Court believes that the ALJ properly applied that legal standard to the body of evidence that was before her in adjudicating plaintiff's entitlement to Social Security benefits.

<u>**RECOMMENDATION**</u>

For the foregoing reasons, it is recommended that plaintiff's motion for summary judgment be denied and that defendant's motion for summary judgment be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.   Douglass v. United Services Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en

banc).

      New Orleans, Louisiana, this __5th__ day of _____December_____,
201<u>3</u>.

                                    ALMA L. CHASEZ
                  UNITED STATES MAGISTRATE JUDGE